IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

JAMES E. MONK,
        Plaintiff,

v.                                              Civil Action No. 3:20-cv-518

DONALD W. GULICK, JR., et al.,
        Defendant.

## OPINION

The plaintiff, James E. Monk, alleges that the defendants, Chesterfield County police officers Donald W. Gulick, Jr., Lucas C. Curtis, and Brandon Schilke, used excessive force against him during a pretextual traffic stop. Specifically, Monk alleges that the defendants used excessive force when they forced him to the ground, used pepper spray against him, and, in particular, when Gulick tased him. Monk also contends that Schilke and Curtis should have intervened to stop Gulick from tasing him.

Monk's second amended complaint contains five counts: a claim brought pursuant to 42 U.S.C. § 1983 alleging that all three defendants violated his Fourth Amendment rights by using excessive force against him during the pretextual stop (Count One); a bystander liability claim against Schilke and Curtis (Count Two); assault and battery against all three defendants (Counts Three and Four); and malicious prosecution against Gulick (Count Five).

Based on the second amended complaint alone, neither the Court nor the defendants can readily identify whether Monk brings his bystander liability claim pursuant to § 1983 or Virginia negligence law. The confusion engendered by Monk's second amended complaint has led the defendants to move to dismiss any negligence claims that Monk brings. The defendants also argue – for the third time – that qualified immunity bars Counts One through Four against Schilke and Curtis. For the reasons stated herein, the Court will deny the defendants' motion.

## I. **FACTS ALLEGED IN THE COMPLAINT**[1]

At approximately 12:30 a.m. on March 28, 2018, Gulick, a Chesterfield County police officer, pulled over Monk and his female companion for "window tint [that] appeared to be too dark." (ECF No. 28 ¶ 20.) Monk did not have his driver's license with him at the time, but he claimed that "he was a licensed driver." (*Id.* ¶ 23.) While verifying Monk's license status, Gulick told "control and/or other officers that he smelled a strong odor of marijuana on the driver and passenger" and that he planned to detain them. (*Id.* ¶ 25.) Curtis and Brian Anderson, both Chesterfield County police officers, soon arrived on the scene. Schilke, another Chesterfield County police officer, arrived shortly thereafter. (*Id.* ¶ 26.)

After running the license check, Gulick and Schilke approached Monk's car. Gulick asked Monk to get out of the vehicle. Monk complied and asked "if everything was alright, whether there was a problem with his information, or if he had a warrant or other problem [of] which he was unaware?" (*Id.* ¶ 30.) "Gulick responded that he would explain or talk about all of that in a moment," and then asked Monk "to turn around to face the vehicle." (*Id.* ¶¶ 31-32.) Monk started to comply while "again ask[ing] what is this all about"? (*Id.* ¶ 34.) But, before he completely turned, Gulick "grabb[ed] Monk's arm to physically force him to turn to face the vehicle in an effort to place him in handcuffs. . . . At no time during the encounter [did] Monk make a move or

---

[1] Because Monk relied on the body camera ("BWC") footage in his second amended complaint, the Court may consider it when deciding the motion to dismiss. *See Goines v. Valley Cmty. Servs. Bd.*, 822 F.3d 159, 166 (4th Cir. 2016) (noting that when deciding a motion to dismiss a court may "consider documents that are explicitly incorporated into the complaint by reference, . . . those attached to the complaint as exhibits," and those "integral to the complaint" whose authenticity neither party disputes (internal citations omitted)). The defendants also rely on the footage and do no dispute its authenticity. (*See, e.g.*, ECF No. 32 at 7-8, 11-12.)

gesture towards Gulick or any other defendant."[2] (*Id.* ¶ 35.) Monk "stiffen[ed] to Gulick's touch before completing a 180 degree turn to face the vehicle." (*Id.* ¶ 36.) He simultaneously asked for a third time for the reason for his arrest. (*Id.*) Gulick responded, "[B]ecause you smell like weed." (*Id.* ¶ 37.)

Meanwhile, Curtis "physically engaged with Monk as well." (*Id.* ¶ 38.) All the while, Monk continuously asked, "[W]hy is this happening?" (*Id.*) "Schilke then openly inquire[d] 'to the ground?'" (*Id.* ¶ 40.) Gulick responded affirmatively, and he and Curtis "attempt[ed] to slam Monk to the ground." (*Id.*)

At this point, Schilke drew his taser and said, "Watch out. Watch out. Taser, taser, taser. Taser, taser, taser." (*Id.* ¶ 42.) "In response to Schilke's words, Curtis release[d] his grasp on Monk and back[ed] away," leaving Monk to fall to the ground. (*Id.* ¶ 44-45.) "Monk attempt[ed] to recover from his fall by sitting up[,] and Gulick immediately yell[ed] for him to stay down while pushing him down to [the] pavement on his arm/shoulder." (*Id.* ¶ 47.) Shortly thereafter, Schilke commanded Monk to "roll or get on [his] stomach." (*Id.* ¶ 50.) When Monk did not immediately roll over, Gulick and Curtis then tried, unsuccessfully, "to roll Monk to his stomach." (*Id.* ¶ 51.) Curtis then punched Monk's side.[3]

The officers continued to order Monk to roll over. Eventually, Gulick sprayed Monk's face with pepper spray, while the officers continued to command him "to get on his stomach." (*Id.*

---

[2] The defendants assert that Monk "attempted to grab Officer Curtis and then took a swing at Officer Curtis." (ECF No. 32, at 8.) The Court has reviewed the BWC video from each officer present at the scene. Though the footage shows Monk twisting to free himself from the officers as he asked why they detained him, it does not show Monk attempt to grab or "take a swing" at Curtis or any other officer.

[3] Throughout their briefs, the defendants euphemistically refer to these punches as "distraction techniques." (ECF No. 32, at 8, 13, 16; ECF No. 36, at 3-4, 7.) As best the Court can tell, the term thinly disguises that punching someone distracts them.

3

¶ 55-57.) Although Monk disregarded the commands to roll on his stomach, throughout the altercation "he remained on the pavement, on his back, with his hands raised . . . asking, 'why is this happening?'" (*Id.* ¶ 58.)

At one point, Monk "beg[an] to roll over towards his stomach," but he "[was] inexplicably pulled back . . . on to his back by Schilke." (*Id.* ¶ 62.) "Curtis then deploy[ed] pepper spray a second time, while all defendants continue[d] to collectively yell for Monk to get on his stomach with tasers drawn." (*Id.* ¶ 63.) Moments later, Schilke punched Monk's abdomen again.

With Monk refusing to roll on his stomach, Gulick tased Monk in his "front upper torso," while Monk "was lying on [his] back with his hands raised above his head" and "repeatedly beg[ging] defendants not to employ tasers." (*Id.* ¶ 71.) "Once tased, Monk immediately roll[ed] to his stomach," and the defendants handcuffed him. (*Id.* ¶ 73.)

## II. DISCUSSION[4]

### A. Negligence

The defendants observe that "Count II of Plaintiff's Second Amended Complaint appears to assert a claim for bystander liability based on a negligence theory under Virginia law." (ECF No. 32, at 17.) They argue that the Court should dismiss any negligence claim against Schilke and

---

[4] The defendants move to dismiss the complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). A Rule 12(b)(6) motion gauges a complaint's sufficiency without resolving any factual discrepancies or testing the claims. *Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992). In considering the motion, a court must accept all allegations in the complaint as true and must draw all reasonable inferences in the plaintiff's favor. *Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 253 (4th Cir. 2009).

The principle that a court must accept all allegations as true, however, does not apply to legal conclusions. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). To survive a Rule 12(b)(6) motion to dismiss, a complaint must state facts that, when accepted as true, state a facially plausible claim to relief. *Id.* "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

Curtis because Monk has not alleged that either officer had a duty to stop Gulick from tasing him. The defendants also contend that sovereign immunity bars negligence claims against Schilke and Curtis.[5]

As the defendants noted, Count Two of Monk's second amended complaint appears to bring a state law negligence claim against Schilke and Curtis. Monk alleges that Schilke and Curtis had a "special relationship" with Monk that gave them "the duty to use higher levels of care[] for the safety, well-being, and protection of Monk." (ECF No. 28 ¶ 121.) He alleges that Schilke and Curtis violated, or breached, that duty by allowing Gulick to tase him, (*id.* ¶ 122), which "caused or contributed to Monk's injuries," (*id.* at 125).

In addition to pleading the classic elements of negligence—duty, breach, causation, and damages—Monk reiterates in his brief opposing the defendants' motion to dismiss that he brings a state law claim alleging that Schilke and Curtis breached their duty to act "non-negligently" by failing to prevent Gulick from tasing him. (*See* ECF No. 35, at 14-15.) And he cites cases and secondary sources discussing negligence to support his claim that he adequately pled a state law claim.[6]

---

[5] In their motion to dismiss, the defendants ask the Court to dismiss negligence claims against *all* defendants. (ECF No. 31, at 1.) The defendants' briefs, however, discuss only Schilke and Curtis. (*See* ECF No. 32, 17-19; ECF No. 36, at 8-9.) Because Monk does not bring a negligence claim, the Court need not resolve this discrepancy.

[6] (*See id.* at 15 (citing *RGR, LLC v. Settle*, 288 Va. 260, 764 S.E.2d 8 (2014) (analyzing duty and contributory negligence in a wrongful death case stemming from a collision at a private railroad crossing); *Burns v. Gagnon*, 283 Va. 657, 727 S.E.2d 634 (2012) (discussing, among other things, duty and sovereign immunity in a personal injury case involving a fight at a high school); *Kellerman v. McDonough*, 278 Va. 478, 483, 684 S.E.2d 786, 788 (2009) (addressing "whether adults who agree to supervise and care for a child owe a duty to exercise reasonable care in the supervision and care of that child"); *Didato v. Strehler*, 262 Va. 617, 554 S.E.2d 42 (2001) (considering the viability of claims based on negligence, assumption of duty, and the creation of a special relationship in medical negligence cases); and Restatement (Second) of Torts § 324 (Am. Inst. 2020) (discussing the duties of those who take charge of a helpless person)).)

5

Nevertheless, Monk claims that he "is not asserting a negligence claim as evidenced by the fact that he did not specifically add a count to his claim beyond that which had already been asserted or permitted by Court Order." (*Id.* at 23.) He explains that he "merely recounted duties owed to him due to the special relationship created when Defendants detained him, placing him under their custody and control." (*Id.*) He also claims that "the duties described address intentional and willful and wanton behavior incorporated by reference in Plaintiff's bystander claim." (*Id.*) In his view, "leave to file a Second Amended Complaint incorporating bystander liability permitted the plaintiff to assert, discuss, and argue the duties owed to Plaintiff as a result of the special relationship created between the Defendants and the Plaintiff." (*Id.*)

Thus, Monk makes plain that, despite all signs and argument to the contrary, he did *not* bring a negligence claim against the defendants. Instead, he saw the opportunity to file a second amended complaint as a chance to "assert, discuss, and argue the duties" the defendants owed him even though he did not bring a negligence claim to enforce those duties. (*Id.*) This understandably created confusion as to what claims Monk brought. Because only Monk knows what claims he intended to bring, the Court feels obligated to take him at his word. Thus, it finds that he has *not* asserted a negligence claim. Accordingly, the Court will deny the defendants' motion to dismiss any such claim as moot.

Further, the Court finds that, although Monk discusses bystander liability in Count One[7] contrary to the Court's explicit instructions to assert bystander liability as "a separate claim," (ECF No. 27), he brings Count Two as a bystander liability claim pursuant to § 1983. Monk's assertion in Count Two that he seeks redress for a violation of his Fourth and Fourteenth Amendment rights supports this finding because "Section 1983 . . . creates a private right of action to vindicate

---

[7] (ECF No. 28 ¶ 109 (alleging bystander liability in the alternative under Count One).)

violations of 'rights, privileges, or immunities secured by the Constitution and laws' of the United States." *Rehberg v. Paulk*, 566 U.S. 356, 361 (2012) (quoting 42 U.S.C. § 1983).

### B. *Qualified Immunity*

The defendants argue that qualified immunity bars Monk's § 1983, assault, and battery claims against Schilke and Curtis. The defendants made, (ECF No. 4, at 13-17), and the Court rejected, this argument as to Schilke when the defendants moved to dismiss Monk's complaint. (*See* ECF No. 10 (denying the defendants' motion as to Monk's excessive force claim).) The Court rejected this argument again as to both Schilke and Curtis when the defendants moved to dismiss Monk's amended complaint. (ECF No. 30, at 18:16-20 ("I am going to deny the motion to dismiss as to count two. And as to the state law claim, anything else on the grounds of qualified immunity because I don't think at this time the record is fully developed enough to allow us to decide that.").) Undeterred by the Court's previous decisions, the defendants now raise this argument for a *third time*, even though the allegations in Monk's complaint, amended complaint, and second amended complaint have hardly changed. The Court once again finds this argument unpersuasive and will deny the defendants' motion to dismiss Counts One through Four on qualified immunity grounds.[8]

"[A] defendant can raise the qualified-immunity defense at both the motion to dismiss and summary judgment stage." *Willis v. Blevins*, 966 F. Supp. 2d 646, 652 (E.D. Va. 2013) (quoting *Tobey v. Jones*, 706 F.3d 379, 393-94 (4th Cir. 2013)). Qualified immunity, however, "is peculiarly well-suited for resolution at the summary judgment stage." *Id.*

---

[8] The assault and battery claims (Counts Three and Four) rise and fall with the Court's resolution of Counts One and Two. *See Rowland v. Perry*, 41 F.3d 167, 174 (4th Cir. 1994) ("The parallel state law claim of assault and battery is subsumed within the federal excessive force claim . . . ."). Accordingly, the Court's denial of the defendants' motion to dismiss the excessive force claims (Counts One and Two) necessitates the denial of the defendants' motions to dismiss the assault and battery claims (Counts Three and Four).

7

Qualified immunity protects Schilke and Curtis unless Monk "pleads facts showing (1) that the official violated a statutory or constitutional right, and (2) that the right was 'clearly established' at the time of the challenged conduct." *Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). Monk has done so here.

First, Monk has pled enough facts to show that Schilke and Curtis violated his Fourth Amendment rights under both a direct liability and bystander liability theory. Under a direct liability theory, courts analyze claims that police officers used excessive force in violation of the Fourth Amendment "under an 'objective reasonableness' standard." *Smith v. Ray*, 781 F.3d 95, 100-01 (4th Cir. 2015) (quoting *Henry v. Purnell*, 652 F.3d 524, 531 (4th Cir. 2011) (en banc)). "The officer's actions do not amount to excessive force if they "are 'objectively reasonable' in light of the facts and circumstances confronting [him], without regard to [his] underlying intent or motivation." *Id.* at 101 (quoting *Graham v. Connor*, 490 U.S. 386, 397 (1989)).

Here, Monk alleges that, although he did not threaten Schilke's and Curtis's safety or attempt to flee the scene, both officers punched him and Curtis pepper sprayed him. The Fourth Circuit has previously held that qualified immunity *did not apply* when a police officer wrestled a suspect to the ground after the suspect allegedly committed a "minor" offense and "posed no threat to the officer or anyone else." *Rowland*, 41 F.3d at 171-72, 174. "[S]ome evidence" showed that the suspect "offered resistance," but this did not change the Fourth Circuit's finding "that a jury could find that no reasonable officer could have believed his conduct to be lawful in light of the circumstances known to him at the time." *Id.* at 174. Thus, under the circumstances alleged here, "it would have been 'clear to a reasonable officer' . . . that the non-deadly force used against [Monk] was constitutionally excessive." *Livingston v. Kehagias*, 803 F. App'x 673, 684 (4th Cir.

2020).[9] In other words, "it was clearly established that the Fourth Amendment prohibited this use of force under these circumstances." *Id.* Additionally, Schilke and Curtis base their defense, at least in part, on the reasonableness of their actions, and the Court cannot decide that issue without further discovery. *See Tobey*, 706 F.3d at 388-99.

Monk also alleges enough facts to set forth a prima facie bystander liability claim against Schilke and Curtis. To successfully plead a bystander liability claim against a police officer, a plaintiff must allege that the officer "(1) [knew] that a fellow officer [was] violating an individual's constitutional rights; (2) ha[d] a reasonable opportunity to prevent the harm; and (3) cho[se] not to act." *Stevenson v. City of Seat Pleasant*, 743 F.3d 411, 417 (4th Cir. 2014) (alteration in original) (quoting *Randall v. Prince George's Cnty.*, 302 F.3d 188, 204 (4th Cir. 2002)). Monk's second amended complaint satisfies all three elements.

First, Monk alleges that Schilke and Curtis knew that Gulick violated his Fourth Amendment rights by using "objectively unreasonable" force against him. (*See* ECF No. 28 ¶ 122 (asserting that Schilke and Curtis allowed Gulick to tase him even though the officers detained him for misdemeanor offenses, he presented no threat to the public or officers, and he had not attempted to flee the scene).) Second, Monk alleges that Schilke and Curtis had a reasonable

---

[9] A court need not have previously decided an identical, "fundamentally similar," or "materially similar" case to give an officer notice that his behavior violates a plaintiff's constitutional rights. *See Safford Unified Sch. Dist. No. 1 v. Redding*, 557 U.S. 364, 377 (2009) ("To be established clearly, however, there is no need that 'the very act in question [have] previously been held unlawful.'" (quoting *Wilson v. Layne*, 526 U.S. 603, 615 (1999)); *Jones v. Buchanan*, 325 F.3d 520, 531-32 ("Although earlier cases involving 'fundamentally similar' or 'materially similar' facts 'can provide especially strong support for a conclusion that the law is clearly established, they are not necessary to such a finding." (quoting *Hope v. Pelzer*, 536 U.S. 730, 741 (2002)). Rather, "the 'salient question' is whether 'the state of the law' at the time of the events at issue gave the officer 'fair warning' that his alleged treatment of the plaintiff was unconstitutional." *Id.* at 531 (quoting *Hope*, 536 U.S. at 741.) At the time of the alleged constitutional violations here, the officers had fair warning that punching and pepper spraying Monk violated the Fourth Amendment.

9

opportunity to prevent this harm due to the encounter's duration. *See Stevenson*, 743 F.3d at 419 (finding that the complaint adequately pled *all three elements of a bystander liability claim* based on the bystander officers' "presence at the scene of the altercation and . . . that the officers allow[ed] to be committed . . . unreasonable seizure[s]" (internal quotation marks and citations omitted)). Finally, Monk adequately pled the third element because "nothing prevented [Schilke and Curtis] from attempting to stop the harm to" him. *J.A. v. Miranda*, No. PX16-3953, 2017 WL 3840026, at *4 (D. Md. Sept. 1, 2017).

In addition, under either theory—excessive force or bystander liability—Monk has alleged that Schilke and Curtis violated a right that "was 'clearly established' at the time of the challenged conduct." *al-Kidd*, 563 U.S. at 735 (quoting *Harlow*, 457 U.S. at 818). Accordingly, qualified immunity does not shield Schilke and Curtis from liability at this stage of the litigation. Schilke and Curtis principally base their qualified immunity defense on the reasonableness of their response to Monk's conduct. But, as the Court clearly indicated at the previous motion to dismiss hearing, "[w]hat is reasonable in this context . . . requires greater factual development and is better decided once discovery has been conducted." *Tobey*, 706 F.3d at 389.[10] Accordingly, the Court will deny the defendants' motion to dismiss Counts One through Four.

### III. CONCLUSION

For the foregoing reasons, the Court will deny Donald W. Gulick, Jr., Lucas C. Curtis, and Brandon Schilke's motion to dismiss.

---

[10] *See also DiMeglio v. Haines*, 45 F.3d 790, 795 (4th Cir. 1995) ("In instances where there is a material dispute over what the defendant did, and under the plaintiff's version of the events the defendant would have, but under the defendant's version he would not have, violated clearly established law, it may be that the qualified immunity question cannot be resolved without discovery."); *P.A. v. Fayette Cnty. Bd. of Educ.*, No. 2:19-cv-705, 2020 WL 4740481, at *5 (S.D.W. Va. Aug. 14, 2020) ("[O]n the issue of reasonableness, 'qualified immunity is peculiarly well-suited for resolution at the summary judgment stage.'" (citation omitted)).

The Court will issue an appropriate Order.

Let the Clerk send a copy of this Opinion to all counsel of record.

Date: 6 April 2021
Richmond, VA

/s/
John A. Gibney, Jr.
United States District Judge